We have set out three independent reasons for granting relief to Mr. Sirvanyan. He is entitled to asylum, withholding of removal, and protection under the Convention Against Torture. The government does not really contest those arguments, since it did not file any final brief. What the government does say in its brief is that there are two ways it can avoid those arguments. First, the government says that Sirvanyan abandoned his claims to asylum and withholding of removal because he failed to appropriately challenge the immigration judges' findings before the Board of Immigration Appeals. And second, the government claims that Sirvanyan was a persecutor, which bars him from relief. Neither of these arguments should be accepted, and in my limited time I plan to focus on those two points. Sirvanyan's brief, which he submitted to the Board of Immigration Appeals, demonstrates that Sirvanyan did not abandon his claims to asylum and withholding of removal. Indeed, Sirvanyan explicitly states in his brief that he is seeking asylum on the grounds of political opinion. He then continues to set forth the facts which show why he is entitled to political asylum. That the issue was argued somewhat differently before the Board of Immigration Appeals does not mean that it was not preserved for appeal in this case. And we cite the case for that proposition as the Cruz-Navarro v. INS. Kennedy. How was it argued somewhat differently? Wessler. I'm sorry, Your Honor? Kennedy. How was it argued, as you style it, somewhat differently? Wessler. Well, I don't know that it was, but I'm making the point. I think it was argued and the issue was there in the brief. But the point I'm trying to make, and I'm sorry if I'm not being clear, is that if it were argued, if there were slight differences in the argument, that doesn't mean it was waived for purposes of appeal and that he abandoned the claim. I don't think it's there. When you look at the brief, the issue is there. The government's, or excuse me, the immigration judge's finding that Sirvanyan was a persecutor should not be accepted by this court, because there is no evidence in the record that Sirvanyan actively, personally participated in persecutorial acts. In fact, the record shows that Sirvanyan tried to help Jehovah's Witnesses, not harm them. For example, in the summer of 1997, when he was ordered to take a Jehovah's Witness to the police station, he released him from custody, knowing that if he took him, he was likely to be beaten. Several months later in November of 1997, Sirvanyan again was ordered to arrest two Jehovah's Witnesses and take them to the station where he knew they were likely to be abused, and he refused to do that. He released them on the way to the prison. Two months later, Sirvanyan, in January of 1998, tried to stop other police officers from abusing an elderly Jehovah's Witness. And when the police told him to abuse the Jehovah's Witness and to beat him, he himself was beaten. He was jailed for two days, and he was fired from his job. Sirvanyan went on to join an opposition group, the National Democratic Union. And let me ask two things. Number one, the notes, well, we had testimony from Ms. Duggan, and we also have introduced into the record the notes that were refreshing her memory as she was testifying. Yes. I'm just now reading from the notes rather than from her testimony, although her testimony is roughly consistent with these notes. I'm on page 271 of the administrative record. Use physical force when arresting? Yes, if need to. Use excessive force? Yes, because dot, dot, dot. Hardly ever alone, but if I didn't use force, they would force me. That sounds as though that's, and that's how Ms. Duggan interpreted it, that from time to time, he not only used force, but excessive force, although he was in this rendition compelled to or would have been compelled to. Yes. Two responses to that. First of all, I don't think that testimony is clear enough to show that for the government to meet its burden, if you rely on that alone, that Sirvanyan persecuted Jehovah's Witnesses. Because first of all, it's not clear from that testimony alone that it was Jehovah's Witnesses that were involved. The government, or the asylum officer, didn't go any further and ask follow-up questions as to who it was that he used excessive force on. And equally as important, the government didn't ask why the force was used, or didn't inquire into whether or not the force was necessary. And so the government, at this point, its burden is to show by clear, convincing, unequivocal evidence that Sirvanyan was persecuted. My second question is, what do we do with the witness, and I'm not sure I can pronounce the name properly, Garnik Galajian, that the IJ found to be incredible, as to say, to be perjuring himself because he was smoking, because he didn't understand what a blood card was, because he couldn't give any specifics as to what hall he was going to. I think that credibility finding, as to that witness, is sufficiently supported. The IJ then goes on to say, and the willingness of the petitioner to put on this perjuring witness casts doubt upon the rest of the evidence. What do we do with that? My response, Your Honor, would be that, first of all, if you set that one witness's testimony aside, the evidence is still compelling and shows that Sirvanyan is entitled to relief on the three grounds that he raised. But setting that aside, the immigration judge did not make an adverse credibility finding. It found, at most, that it said something to the effect that his testimony was not entirely credible. And we addressed that in our brief inside a case that makes clear that that finding alone, or those types of statements by an immigration judge, are not sufficient and do not amount to finding an adverse credibility. So in your view, we disregard the testimony of this one witness and we take the rest of the testimony as credible? That's correct. And I think you can do that. And there's still the record is fully developed and the evidence is there that supports his request for relief. I just, getting back to the issue as to whether Sirvanyan was a persecutor, I was just pointing out that the evidence does not show he was a persecutor. The evidence shows in spades that he tried to help Jehovah's Witnesses and not to harm them. But I also want to make the final point that even if it could be said somehow that he was, or his act somehow rose to that level or constituted persecution, there is no evidence that Sirvanyan, that anything he did against a Jehovah's Witness was on account of a protected ground. Or in other words, anything he did in connection with Jehovah's Witnesses was not because of his dislike for Jehovah's Witnesses because they were Jehovah's Witnesses. His motives were, aside from the fact that he wanted to help Jehovah's Witnesses, were to prevent himself from being beaten. He didn't want to get beat further by the police. And so with that, I believe I've said everything that I intend to say, unless the Court has any further questions. Why is Mr. Sirvanyan more like Mr. Fedorenko, the guard in the famous death camp case? He stood by, he saw his fellow officers arresting Jehovah's Witnesses, he knew that Jehovah's Witnesses were going to be beaten, and he took the Queen's shilling and he played the Queen's tune, didn't he? Well, first of all, with respect to the Fedorenko case, as I understand that case, the applicant there admitted to shooting inmates. He actually, there was content that shows that he was actively and personally involved in persecution. And if you look at the evidence here, that's not present. Sirvanyan may have that, he certainly was aware, and we do not dispute that he was aware that there was police abuse of Jehovah's Witnesses and that he even witnessed it. But the evidence doesn't show that he participated in that abuse. In fact, it shows just the opposite, that he tried to stop it whenever he could. Thank you. Okay. Why don't you stay for the rest of your time, and then we'll hear from you again. May it please the Court. My name is Isaac Campbell, and I represent the government in this matter. Welcome to the mass record. Thank you. There are two issues that are relevant in this matter. First, the petitioner has abandoned his claim for asylum and withholding of removal because he did not properly challenge the immigration judge's findings, and according to those claims should be dismissed. The second relevant issue is that the immigration judge recently found that the petitioner was a persecutor, thereby precluding the relief requested, and the record evidence does not require, that the waiver issue. In addressing that issue, I think it's important first to look at the IJ's decision, what the IJ found. The IJ found that petitioner, there was no political basis to find that petitioner was persecuted because of his membership in the NDU, the political party. He found that the petitioner was targeted because he was going to release information on police officer misconduct, and the immigration judge found that he was targeted on that basis, which was not necessarily political. He also found that the received threats that petitioner received and the single beating did not rise to the level of persecution, so that in effect the immigration judge found that the persecution, that the threats and the single beating didn't rise to the level of persecution, and that he did not establish he was targeted on account of political opinion. He also found that the humanitarian grounds for asylum, that it did not warrant a finding of, it did not warrant asylum because the supporting witness was not credible and he was a persecutor. Now if you look at the brief to the Board of Immigration Appeals, petitioner did not address the specific immigration judge findings. Rather, he provided a list of ways to define persecution under various and unrelated grounds. Now it is true that on page 12 of the administrative record, which speaks to the BIA appeal and the facts, he did say that he was seeking asylum on the basis of political opinion. But what's important here is that when an individual appeals to the Board of Immigration Appeals, they need to provide, in an argument, they need to apply the facts and the law to the facts of their case so the DI can evaluate their argument before coming to the court of, before coming before this body. The board can either issue a decision or it can summarily affirm saying the immigration judge's decision is thorough enough. But what is required by statute and by regulation is that they must advance the argument. Here, if you look at page 18 of the administrative record, which deals with the petitioner's argument, he throws out a list of ways that persecution may be found. He references the case of Manav Chang, which talks about membership in a particular social group, which is not relevant here. He mentions the Ortega and the Mendoza-Perez case. And for the proposition, he cites that specific threats may rebut presumption of general violence or countrywide strife, which again are not issues here. If you look at the conclusion on page 19, which deals with that section, he follows the conclusion by saying that it's related to the immigration judge's finding that lack of harm to the petitioner's family was not his father. But he did not deal with the specific issues of the immigration judge's findings, which needs to be done before the case is not done here. And again, this is not merely a procedural argument or a technicality whereby, a hyper-technical argument. If it's not raised to the Board of Immigration Appeals, he has not exhausted his administrative remedies. You know, I have to say that I'm more comfortable getting to this case on the merits. I've read an awful lot of briefs, both to this Court and briefs to the BIA. This strikes me as certainly within the mainstream of briefs raising issues. The BIA clearly understood what was going on. Anybody reading this brief and reading the underlying transcript understands exactly what the complaint is or what the appeal is about. Maybe you would have written a better brief, but I don't think there's any sort of inability of the BIA, once reading this brief, to fail to understand what they're asking about. Well, let's turn to the merits, then, Your Honor, in terms of finding that Petitioner was ineligible for the relief he requested because he was a persecutor. I think to get there, there are three things I think this Court should evaluate in making the determination regarding this particular issue. First, to look at the fact that Petitioner was a police officer. Now, it's clear in this jurisdiction that in and of itself is not enough to find that he is a persecutor, but it is relevant in a way that I'll make clear when I get to the second point. Now, according to Petitioner's own testimony, as a police officer, he was authorized to arrest individuals and to use force when necessary. And according to Petitioner's own testimony, police officers, like himself, would target Jehovah's Witnesses because they were Jehovah's Witnesses and would assault them. So this is the context in which he worked. He was an officer. He was not, for example, employed by the police force, but as a clerk or administrative aide. What evidence do you have that this Petitioner would assault Jehovah's Witnesses? No, I'm saying that police officers would. I'm just putting this in context. Oh, I see. Not this Petitioner, but other police officers would. Yes. Okay. I'm sorry. I misunderstood. Now, going to his particular and specific conduct, as a police officer, which is according to Petitioner's testimony, police officers would beat Jehovah's Witnesses and target them. He would go to the homes of Jehovah's Witnesses, and Petitioner admitted that he knew the purpose of such visits were at least to beat Jehovah's Witnesses, if not do more, arrest them. He made such an admission on page 143 of the administrative record. Say again? I'm sorry. He used, on page 143 of the administrative record, he admitted that he would go to the homes of Jehovah's Witnesses, where he knew the purpose of the visit was at least to beat them, and he would talk about the fact that they might do more, but after being questioned, he admitted that, yes, he knew when he was going to these homes, that was at least the purpose of the visit. He used his position as a police officer and the color of authority in his position to gain entry to the homes of Jehovah's Witnesses. He, by his own admission, stood by and admitted at least five times of Jehovah's Witnesses. He admitted he personally seized religious paraphernalia, which can be found at page 112 of the administrative record. He admitted that he arrested Jehovah's Witnesses and brought them on at least three occasions to police stations, and that can be found at page 276 of the administrative record. And although he claimed he never personally witnessed the arrestees that he brought in being beaten at the police station, he did admit that he knew and had personally seen others brought to the police station who were beaten, and that can be found at page 276 of the record. He admitted that he did nothing for two years when he saw this abuse occurring for two years because he didn't want to lose his job, and that can be found at page 271 of the record. And I guess an analogy that I would use to describe this behavior is sort of like if an individual, as Jana pointed out in the Federinko case, if one was a guard, a Nazi guard, and you were bringing prisoners to a concentration camp, even if you weren't the one that actually put them into the gas chambers or flipped the switch or pushed something like that, shoved a switch or a button, but you didn't actually initiate the process, that your participation would be enough. Now, Petitioner argues that he didn't agree with the targeting of Jehovah's Witnesses and that there were instances where he tried to help. And while that is certainly laudable and noble, it does not obviate his other conduct by sitting by. But then, Counselor, if being an employee at a concentration camp is enough, what about the case of the barber? How do you distinguish that one? Because I think there is a difference, and that's why at the beginning I talked about the fact that he was a police officer and his role. Unlike the barber, I think it would be analogous in this case if he was saying that it's clear that police officers were abusing Jehovah's Witnesses on the basis of, on account of their religion. And it was sort of like if he was an administrative aide or a clerk employed by the police, but he had no active role. I think that is analogous to the issue with the barber. Here, he was a police officer. Here, by his own admission, even though he says, I attempted to intervene and save, there was one issue with an older individual, he was assigned to stand guard while they ransacked the man's apartment. Because he was a police officer under colored authority, when he went into those apartments, he lent credence to the persecution that was going on. He even, by his own admission, stood guard while they ransacked this man's house. He arrested, by his own admission, Jehovah's Witnesses and brought them to the station. Even though he was aware that Jehovah's Witnesses were being beaten and targeted, he, by his own admission, did not walk away, but didn't want to lose his job, and so he didn't do anything for two years. Can I ask you on the credibility issue? I think we have as common ground that the second witness was discredited, and I.J. had ample ground for disbelieving that witness. Yes, Your Honor. As to the other testimony, are we required to take it as true? While there wasn't an adverse credibility finding, I think that Petitioner has a particular burden of proof, and that the adverse credibility finding of that particular witness can be used, this Court can use that as undermining the Petitioner's ability to meet his burden of proof in providing. Undermining in what sense? Because we don't believe it? Because you don't believe in that he also. But if we don't believe it, that's tantamount to an adverse credibility finding. Yes, Your Honor. I think it. The decision to call a witness by his attorney, the witness turns out to be a bum, can be the Petitioner, even though the I.J. made no adverse credibility finding? Actually, Your Honor, I would step back. I wouldn't say that. Guilt by association, isn't it? Yes, I'll step back and say that it's not the government's position that that warrants an adverse credibility finding. Well, if it doesn't warrant an adverse credibility finding, then don't we have to accept what the Petitioner says as to his attempts to aid the Jehovah's Witnesses? Is this true? Yes, Your Honor. However, that is irrelevant because if one is a persecutor, one does not then obviate what one has done by having a change of heart. If one has aided or assisted in the persecution of others, while it is laudable and notable that one would then change their minds, that is not enough. And finally, Your Honor, even the immigration judge made a reasonable interpretation that the Petitioner was a persecutor. And while the Petitioner may argue that you may also have a reasonable contrary interpretation, the issue is whether or not, and the Petitioner's burden is, whether or not the record evidence compels such a conclusion. Yeah, okay, we understand that. Thank you very much. Shirvanian, with respect to this, the persecutor issue, Shirvanian was not a Nazi guard at a concentration camp that murdered innocent Jews, or anything even close. He was a member of the National Police Force in Armenia, a legitimate government organization that had corrupt elements. And when he was confronted with those corrupt elements, this abuse of Jehovah's Witnesses, Shirvanian opposed it. There is no evidence. The government has said that he was a persecutor, but has not pointed to evidence that he was actively and personally involved in persecution. The evidence shows, and it is compelling, that he tried to stop the persecution of Jehovah's Witnesses in numerous ways and numerous times. What's your best case that says that you have to be actively, personally involved in persecution to be subject to the persecutor's bar, even if the agency for which you work does persecute? The case I would cite, which we cited in our brief, was the Vuk Mirovic case. Which one was that? Vuk, and I'm not Vuk Mirovic. It's V-U-K. I apologize. There were a number of cases we cited in our brief, and I don't have them all on the tip of my fingers, but it's V-U-K-M-I-R-O-V-I-C. Okay. And tell us about that case. I apologize. It was, I know it was a case that involved a, the applicant was involved in arresting and locating members of the Communist Party. And there were some, on some grounds it was justified, and others it was not. But in any event, there's a good discussion in that case. I know that it talks about the requirements for showing that someone was a persecutor and states that they have to be, the person has to, you have to focus on the particularized conduct of the individual and show that they were personally involved in the persecution. And finally, let me just state with respect to the credibility issue, you've heard the government say that there was no adverse credibility finding with respect to Cherbanion, therefore, his testimony must be treated as credible, and that should be the end of the matter. Unless there are any further questions, I'll submit them. Okay, thank you very much. Thank you. And thank you, I gather you were participating as part of the pro bono project? Yes. Yes, and of course, thanks you for participating in that fashion. Excellent argument. Thank both sides. The case of Cherbanion versus Gonzalez is now submitted for decision. The next case on the argument calendar.
judges: T.G. Nelson, W. Fletcher, Bea